5 F.3d 535
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Angelita EIDE-KAHAYON, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70034.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1993.
Decided Aug. 16, 1993.
 
 1
 Before: WOOD,** REINHARDT, and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Angelita Eide-Kahayon appeals the Board of Immigration Appeals decision denying her suspension of deportation and voluntary departure filed under 8 U.S.C. Secs. 1254(a)(1) & (e). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a) and we affirm.
 
 
 4
 * Statutory ineligibility for suspension of deportation or voluntary departure, when based on want of good moral character, is reviewed for substantial evidence. Mabugat v. INS, 937 F.2d 426, 431 (9th Cir.1991); Hernandez-Luis v. INS, 869 F.2d 496, 498 (9th Cir.1989).[1] To reverse, we must find that the evidence not only supports the contrary conclusion, but compels it. INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992). The INS is granted wide discretion in evaluating the applicant's character. Mabugat, 937 F.2d at 432.
 
 
 5
 To merit suspension of deportation, Eide-Kahayon must show: (1) physical presence in the United States for not less than seven years preceding the date of application; (2) "good moral character" for the same period; (3) extreme hardship to the alien or to her qualifying family. 8 U.S.C. Sec. 1254(a); INS v. Wang, 450 U.S. 139, 140 (1981). To merit voluntary departure, Eide-Kahayon must demonstrate: the ability to depart voluntarily at her own expense, and good moral character for at least five years immediately proceeding the application for relief. 8 U.S.C. Sec. 1254(e); Abedini v. INS, 971 F.2d 188, 192 (9th Cir.1992). Good moral character cannot be established if the person "during the period for which good moral character is required to be established, is, or was ... one who has given false testimony for the purpose of obtaining any benefits under this Chapter." 8 U.S.C. Sec. 1101(f)(6). The BIA held that Eide-Kahayon is statutorily barred from suspension of deportation and voluntary departure because she gave false testimony during a rescission hearing in 1986, within the five and seven year period during which good moral character must be shown.
 
 
 6
 The BIA's decision is supported by substantial evidence. In the 1986 rescission hearing, Eide-Kahayon testified that she thought her husband had died in 1980 when she received the death certificate. She also denied lying under oath in 1980 before the immigration examiner. Yet at her 1990 hearing, Eide-Kahayon testified that she knew her husband was alive in 1980 when she married Mr. Eide, and she also admitted to lying in the 1986 proceeding.
 
 
 7
 Eide-Kahayon argues that the BIA decision should be reversed since she was without counsel in the 1986 hearing and her false statements in 1986 were made out of fear, not an intent to receive benefits under the Act. The BIA concluded that, "[e]ven if she were fearful of returning to the Philippines and 'intimidated' at the rescission proceedings ... it would not alter the fact that her false testimony was given for the purpose of obtaining an immigration benefit." We agree. Kungys v. United States, 485 U.S. 759 (1988) is not to the contrary. Though the Court noted that willful misrepresentations made for "other reasons" such as fear are not sufficient to establish bad character, id. at 780, it nevertheless remains true that Eide-Kahayon lied to seek benefits under the Act. Because she was motivated by fear of returning to the Philippines, and, at least in part, by a desire to seek an immigration benefit, Kungys does not contradict the BIA's decision.
 
 II
 
 8
 Eide-Kahayon next argues that the BIA erred in failing to consider evidence of equitable estoppel. However, we need not address whether equitable estoppel may apply in this context since there is no evidence of affirmative misconduct on the part of the government. Eide-Kahayon appears to claim that the ILJ's statement at the rescission hearing that "any deportation proceedings would have 'to come later' " constitutes affirmative misconduct. We fail to see how.
 
 III
 
 9
 Eide-Kahayon claims that the ILJ's refusal to grant her a continuance during the rescission hearing violated due process. Since our review is limited to the BIA's decision on suspension of deportation and voluntary departure, and does not extend to review of the ILJ's decision on rescission, this question is not properly before us.
 
 IV
 
 10
 Eide-Kahayon has notified this court that she is pursuing a motion to reopen because she has recently been granted I-130 status. As the court did in Roque-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir.1985), we stay the order of deportation for sixty days from the date of this disposition to allow Eide-Kahayon to pursue her motion, and if such a motion is filed with the BIA, for such further time as is necessary for the disposition of the motion by the BIA.
 
 
 11
 AFFIRMED.
 
 
 12
 REINHARDT, Circuit Judge, concurring separately:
 
 
 13
 I concur generally in the majority disposition. However, I would reach the merits of the continuance issue referred to in Section III and would hold that no violation of due process occurred.
 
 
 
 **
 Honorable Harlington Wood, Jr., Senior United States Circuit Judge, Seventh Circuit Court of Appeals, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Only when the facts are undisputed and the BIA decision rests on an issue of law, do we review de novo. Salehpour v. INS, 761 F.2d 1442, 1445 (9th Cir.1985)